GOVE v. CAMPBELL & a.

As against existing creditors, it is immaterial that a voluntary conveyance is made *bona fide*, unless the donor or grantor retains ample means to satisfy his debts.

A voluntary conveyance is *prima facie* evidence of a fraudulent intent against creditors, and if, in the ordinary course of events, the donor's property proves to be inadequate to the disharge of his debts, the presumption of fraud remains, although the property reserved may have been originally adequate to that purpose.

A married woman is not entitled to a homestead in her own estate.

If a husband, in good faith but without valuable consideration, contributes to the purchase of real estate which is the subject of a homestead right, and the title thereto is taken in the name of the wife without any fraudulent design on her part, an existing creditor of the husband can only levy upon the debtor's interest in the premises subject to the wife's right of homestead therein.

BILL IN EQUITY, for annulling the deed of land to the defendant Lucy by Horace Gibson, and for a conveyance to the plaintiff, who had levied an execution on the land as belonging to the defendant Harris, husband of Lucy, and the plaintiff's debtor. The bill alleges that the conveyance was made to Lucy for the purpose of hindering, delaying, and defrauding the plaintiff, a creditor of

Harris's. The answer denies the fraud, and alleges a valid title to the land in Lucy.

June 25, 1878, the plaintiff, having a note signed by Craig and the defendant Harris, as surety, on a writ against him, attached the land, recovered judgment May 15, 1880, for $548.41 damages and $22.77 costs. Execution was issued, and by a levy of the same the land was set off, subject to a homestead right, at $400, in part satisfaction of the execution.

March 20, 1875, Horace Gibson conveyed to Lucy by deed of warranty, for the consideration of $900, the land, being a tract of one fourth of an acre, with a dwelling-house upon it, in Henniker. It has since been occupied by the defendants as a homestead. Harris negotiated with Gibson for the purchase of the property. It was understood between the defendants that Lucy should pay $400 and Harris $500 of the purchase-money, but there was no agreement or understanding between them in whose name the deed should be taken. She was not present at the execution of the deed. Harris had habits of intoxication, and at the time of executing the deed Gibson suggested to Harris that it would be well for him to give the deed in the name of Lucy, his wife, and Harris assented. The deed was so made, and Harris delivered it to Lucy, who received it and had it recorded. Lucy paid her husband of her own money $150, which, with $250 of his own money, he paid to Gibson when the deed was executed, and at the same time gave Gibson his note for $500, which he afterwards paid. She subsequently repaid her husband $250, of which he expended $50 in purchasing blinds for the house. The court found that no fraud, in fact, was intended in taking the conveyance, nor was there any purpose to delay or hinder the plaintiff in the collection of her debt against Harris. At the time of the conveyance the plaintiff's demand against Harris existed, but he owed no other debt. Craig, for whom Harris signed as surety, was insolvent. Harris then owned, and for a long time before had owned, a note against Williams, on which was due between $900 and $1,000, and which was paid to him in different sums betwen March 1, 1876, and July 13, 1876, the payment of March 1 being used to pay his note to Gibson. It did not appear that the existence of this note was known to the plaintiff while it was outstanding, nor that Harris made any attempt to conceal its existence. He had no other visible property at that time, nor since.

The court found, as matter of law, that Harris had a resulting trust in the land to the extent of $500, and that the plaintiff is entitled to a decree for a conveyance to her by the defendants of the land remaining, after a homestead of the value of $500 shall have been set out. The defendants excepted.

*J. Y. Mugridge* and *A. W. Silsby*, for the plaintiff.

*J. H. Albin*, for the defendants.

BLODGETT, J.    This proceeding being one in behalf of a creditor to enforce the payment of a debt existing at the time of the conveyance in question, it is unnecessary to determine whether the husband had a resulting trust in the land; and there being no valuable consideration for his contribution to the purchase, it is likewise immaterial whether it was made in good faith, or otherwise.    If it naturally had the effect to hinder, delay, or defraud the plaintiff, and such has been the result, then, as against her, the law will presume it to have been fraudulent, and the presumption is conclusive.    The question to be decided is not one of motives, but of consequences: "the intent is to be assumed from the act."    It is axiomatic, that debts must be paid before gifts can be made; and it is also an established principle, that a voluntary conveyance is *prima facie* evidence of a fraudulent intent against creditors, and if made by a person who is indebted, is a well recognized badge of fraud, for its natural and probable tendency is to delay, hinder, and defraud creditors.    Bump Fr. Conv. (2d ed.) 268, 269, and cases cited.    This presumption of fraudulent intent may of course be rebutted by proof that the donor or grantor retained ample means to satisfy his debts; and this is the defence these defendants set up against the presumption, and which they must establish by clear and satisfactory proofs founded on the comparative value of the gift or transfer to the wife with the husband's assets.

From the facts in the case, it appears that when the conveyance was made the husband had no property open to attachment other than a promissory note upon which there was due between $900 and $1,000; and a material inquiry then is, Could he withdraw $500 of this fund in the way he did without materially impairing and lessening the plaintiff's then existing prospects of payment? We think it is extremely plain that he could not.    It is true that enough was left to satisfy the plaintiff's claim, but it was barely enough, and, moreover, shortly began to decrease, and so continued, until at the end of sixteen months it had wholly disappeared, not, so far as appears, through some unavoidable or unexpected calamity, but in the ordinary course of events.    This fact of itself demonstrates that the pecuniary condition of the husband forbade the conveyance.    The natural if not inevitable effect of it was to hinder, delay, and defraud the plaintiff, and therefore the law presumes it was so intended.    And this presumption is not rebutted by showing that no fraud was actually intended, for no man is permitted to say that he does not intend the necessary consequence of his own voluntary act; nor by proof that the donor was barely solvent after the making of the conveyance, for "if in the ordinary course of events the donor's property turns out to be inadequate to the discharge of his debts, the presumption of fraud remains, although the property reserved may have been deemed originally adequate to that purpose."    Bump Fr. Conv., before cited, 281.

In the most favorable view to the defendants which can be taken with any regard to elementary legal principles, the conveyance was without valuable consideration to the extent of the husband's contribution, and a case is therefore made entitling the plaintiff to a decree for a conveyance to her by the defendants of five ninths of the premises in question which were paid for by the husband, but inasmuch as a married woman is not entitled to a homestead in her own estate, but is in that of her husband, the five ninths so conveyed will be subject to the right of the defendant wife to a homestead therein.

*Decree accordingly.*

ALLEN, J., did not sit: the others concurred.